<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DON DENT, | : | |
| Plaintiff, | : | Civil Action No. 07-0552 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CINGULAR WIRELESS, LLC, a | : | |
| Delaware limited liability company, | : | |
| | : | |
| Defendant. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

**I.  <u>INTRODUCTION</u>**

Plaintiff Don Dent initiated the instant action against his former employer, Defendant Cingular Wireless, LLC ("Cingular")[1] on December 28, 2006 in the Superior Court of New Jersey.  Plaintiff's Complaint asserts causes of action for detrimental reliance and breach of contract.  On February 2, 2007, Cingular removed the action to this Court on the ground that Plaintiff's claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), and on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1).

This matter comes before this Court on Cingular's  motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).  Cingular's motion is made on the ground that Plaintiff is precluded from bringing a

---

[1]Cingular is now known as AT&T Mobility.  For purposes of this motion, however, this Court will refer to the Defendant as it is referred to in the Complaint - as "Cingular."

1

cause of action under § 301 because he has failed to exhaust the internal grievance procedure made available to him through the applicable Collective Bargaining Agreement ("CBA"), which governed the terms of his employment.  Plaintiff counters that his claims are not governed by the CBA, and that they are not preempted by § 301.  Plainitff argues that rather than dismissing his Complaint, this Court should remand this action to Superior Court for lack of subject matter jurisdiction.  For the reasons set forth below, Cingular's motion will be denied, and this action will be remanded to New Jersey Superior Court.

## II. <u>FACTUAL BACKGROUND</u>

### A.    <u>Facts Alleged In The Complaint</u>

At a job fair at the New Jersey Employment Office in Hackensack, New Jersey in the summer of 2005, Plaintiff was invited by a representative of Cingular, a corporation primarily engaged in the business of providing wireless telephone service, to submit an application online for employment with the company.  (Compl., ¶¶ 1, 3.)

In response to a question on Cingular's employment application, Plaintiff informed Cingular that in 1993 he had committed the crime of robbery with sexual assault.  (Id., ¶ 5.)  In response to a follow-up question regarding the disposition of his prior criminal convictions, Plaintiff informed Cingular that he had gone to jail.  (Id.)

Plaintiff was given a telephone number to call to determine whether, after reviewing his application, Cingular was interested in arranging for pre-employment testing and a job interview. (Id., ¶ 3.)  When Plaintiff contacted Cingular, he was told to go to the company's offices in Paramus, New Jersey, where he would be given an aptitude test.  (Id., ¶ 4.)  Plaintiff passed the aptitude test, and interviewed for a position of employment that same day.  (Id.)

2

Upon completion of his interview, Plaintiff was given a letter of intent advising him that upon successful drug screening and a background check, his employment would begin on August 29, 2005. (Id., ¶ 6.) Plaintiff then received and responded to several inquiries from HireRight, Inc., which had been retained by Cingular as its agent to perform a background investigation. (Id.) Several days before August 29, 2005, Plaintiff contacted HireRight, Inc., which informed him that he had passed the background checks, and that he should report to work on August 29, 2005. (Id., ¶ 7.)

From August 29, 2005 through December 7, 2006, Cingular employed Plaintiff as a customer service representative. (Compl., ¶ 2.) Plaintiff alleges that he accepted Cingular's offer of employment in reliance on the representation that he would be hired despite his criminal history, and would not be terminated because his background was unacceptable to Cingular. (Id., ¶ 8.)

During the period of his employment with Cingular, Plaintiff took on increased responsibility, compensation, and recognition by Cingular for his achievements. (Id., ¶ 9.) In August 2006, Plaintiff was the only Cingular employee in the State of New Jersey to receive the "Q" award for providing quality service to Cingular's customers. (Id.) In October 2006, Plaintiff was the only Cingular employee in the State of New Jersey to win the service excellence award. (Id.) Plaintiff was also invited by Cingular's President to attend an employee recognition award ceremony. (Id.)

In December 2006, John J. Drespel of Cingular's Human Resources Department contacted Plaintiff. Drespel informed Plaintiff that Cingular had come across information regarding his criminal background recently, and that based on that information, Cingular never

should have hired him.  (Id., ¶ 10.)  Plaintiff told Drespel that he had disclosed his criminal

background when he had applied for the position with Cingular.  (Id.)  Drespel replied that it had

been a mistake for Cingular to hire Plaintiff, and he terminated Plaintiff's employment with the

company.  (Id.)

Plaintiff contends that because Cingular terminated his employment, he is now

unemployed, and, despite diligent efforts, has been unable to find comparable employment.  (Id.,

¶ 12.)  Plaintiff also alleges that he suffered severe emotional distress.  (Id., ¶ 13.)  Plaintiff

seeks, *inter alia*, compensation for his loss of income, employment benefits, emotional distress,

and his unused vacation and excused-with-pay days.  (Id., ¶¶ 14-15.)

**B.**       **The Collective Bargaining Agreement**

While employed by Cingular, Plaintiff was a member of the Communications Workers of

America, a collective bargaining unit that had negotiated and executed a CBA with Cingular (the

"Union").  The CBA sets forth the terms and conditions of Plaintiff's employment with Cingular,

and *inter alia*, provides that an employee is permitted to file a grievance with the Union in

response to a disciplinary action.  (Def.'s Mot., Exh. A.)  The CBA specifically provides:

> The Company and the Union agree that grievances shall be confined to differences
> arising out of the interpretation or application of the terms or provisions of this
> agreement, or disciplinary action for just cause and shall be processed according
> to the grievance procedure set forth in this Article . . .

(Id., Art. 7, § 2.)

**III.  ANALYSIS**

**A.**       **Legal Standard Governing Removal Jurisdiction**

"[B]y whatever route a case arrives in federal court, it is the obligation of both the district

court and counsel to be alert to jurisdictional requirements." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004). "Th[is] obligation is equally applicable to cases initially filed in federal court and cases removed from state court to federal court." Id. Under 28 U.S.C. § 1441(a), a suit may be removed to federal court only if it could have been brought there originally. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983). Since "lack of jurisdiction would make . . . continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985).

**B.    Whether This Court Has Federal Question Jurisdiction Over This Matter**

Plaintiff argues that Cingular's motion to dismiss should be denied because this Court lacks subject matter jurisdiction over his claims. Plaintiff specifically argues that federal question jurisdiction does not exist because his state law claims are not preempted by § 301 of the LMRA. Because this Court cannot adjudicate Cingular's motion if jurisdiction is lacking, it must determine whether it has jurisdiction before it addresses the merits of Cingular's motion.

### 1.    *Applicable Legal Standards*

#### a.    Legal Standard Governing Federal Question Jurisdiction

"Title 28 U.S.C. § 1331 vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Empire Healthchoice Assur., Inc. v. McVeigh, 126 S. Ct. 2121, 2131 (2006) (quoting 28 U.S.C. § 1331). Generally, a claim "arises under" federal law only if a federal question appears on the face of plaintiff's complaint. Otherwise, removal jurisdiction is lacking even if defendant asserts a defense based exclusively on federal law. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)

("The party who brings the suit is master to decide what law he will rely upon"); <u>Franchise Tax</u> <u>Bd.</u>, 463 U.S. at 27-28 ("federal courts have jurisdiction to hear, originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); <u>Id.</u> at 10 ("a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law").

There are, however, exceptions to the "well-pleaded complaint rule" that allow the court to look beyond the face of a plaintiff's pleading.  Among these is the "artful pleading" doctrine, which provides that a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action.  If the claim arises under federal law, the federal court will recharacterize it and uphold removal.  <u>Federated Dept. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 n.2 (1981).  The "artful pleading" doctrine applies to state claims that are completely preempted by federal law.  <u>See</u> <u>Rivet v. Regions Bank of Louisiana</u>, 522 U.S. 470, 475-476 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim"); <u>Caterpillar</u>, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted [sic], any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); <u>Avco</u> <u>Corp. v. Machinists</u>, 390 U.S. 557, 560 (1968) (upholding removal based on the preemptive effect of § 301 of the LMRA).

Under the complete preemption doctrine, a federal statute whose preemptive force is "extraordinary" can convert a state law cause of action into a federal claim.  <u>See</u> <u>Metropolitan</u> <u>Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987).  To date, three areas of complete preemption

6

have been identified by the Supreme Court of the United States: (1) claims arising under the LMRA; (2) claims under the Employment Retirement and Insurance Security Act; and (3) certain Indian land grant rights.  See Marcus v. AT&T Corp., 138 F.3d 46, 54 (2d Cir. 1998); Robinson v. Michigan Consolidated Gas Co. Inc., 918 F.2d 579, 585 (9th Cir. 1990).

### b.     § 301 Preemption

Section 301 of the LMRA provides that "suits for violation of contracts between an employer and a labor organization" fall within the exclusive jurisdiction of the federal courts.  29 U.S.C. § 185(a); see Franchise Tax Bd., 463 U.S. at 23 ("The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301"); see also Caterpillar, 482 U.S. at 393; Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes."  Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 404 & n.3 (1988).

To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 extends beyond suits that allege the violation of a collective bargaining agreement.  See Allis-Chalmers, 471 U.S. at 210-11 (stating that "the meaning given a contract phrase or term" in a labor contract must "be subject to uniform federal interpretation").  Thus, a state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution requires judicial interpretation of those terms.  Id. at 213 (holding that § 301

preempted a tort claim for breach of the duty of good faith and fair dealing because "good faith" and "fair dealing" had to be assessed with reference to the parties' contractual obligations).

Despite the broad preemptive effect of § 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. Allis-Chalmers, 471 U.S. at 213; see also Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 807 (3d Cir. 1996) ("a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement") (citation and internal quotations omitted); Tellez v. Pacific Gas & Elec. Co., Inc., 817 F.2d 536, 537 (9th Cir. 1987), cert. denied, 484 U.S. 908 (1987) ("The Court framed the test for preemption of a tort claim as whether the tort 'confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract'") (quoting Allis-Chalmers, 471 U.S. at 213). Thus, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of a labor contract, § 301 does not preempt a claim for violation of the law. See Miller v. AT&T Network Systems, 850 F.2d 543, 546 (9th Cir. 1988); LaResca v. American Tel. & Tel., 161 F. Supp. 2d 323, 328 (D.N.J. 2001) ("the LMRA does not preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," and "where the state law claim can be resolved without substantially interpreting the collective bargaining agreement itself, the claim is independent of the agreement for § 301 preemption purposes") (internal citations omitted).

For this reason, "not every dispute involving the provisions of a collective bargaining

8

agreement is preempted by the LMRA." Beidleman v. Stroh Brewery Co., 182 F.3d 225, 232 (3d Cir. 1999). "'[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). Claims that are "substantially dependent" on an analysis of a collective bargaining agreement are preempted by § 301, however. Kline v. Security Guards, Inc., 386 F.3d 246, 252 (3d Cir. 2004) ("when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted [sic] by federal labor-contract law") (quoting Allis-Chalmers, 471 U.S. at 220).

### 2.    *Whether Plaintiff's Claims Are Preempted*

"[A]s long as the state-law claim can be resolved without interpreting the [collective bargaining] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption [sic] purposes." Lingle, 486 U.S. at 410. Thus, this Court's inquiry must focus on whether Plaintiff's claims can be resolved without interpreting the CBA governing the terms of his employment.

The starting point in analyzing whether a state law claim is preempted by § 301 is to set forth the elements of the claim. Lingle, 486 U.S. at 407. Plaintiff has asserted the state law claims of detrimental reliance and breach of contract.

### a.    **Whether Plaintiff's Detrimental Reliance Claim Is Preempted**

Detrimental reliance, otherwise known as estoppel, "is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a

previously taken position when another party has relied on that position to his detriment."  State

v. Kouvatas, 292 N.J. Super. 417, 425 (App. Div. 1996).  The elements of detrimental reliance

are (1) a representation (or misrepresentation); (2) knowledge that a second person is acting on

the basis of that representation; and (3) substantial detrimental reliance by the second person.  Id.

"In such circumstances the first person is prohibited from repudiating the truth of his

representation."  Id.

        Plaintiff's detrimental reliance claim alleges that he suffered harm because of his reliance

on Cingular's representations that he would not be fired based on his criminal history, which had

been revealed during the course of the company's pre-hiring background investigation of

Plaintiff.  (Compl., ¶¶ 1-15.)

        None of the elements of Plaintiff's detrimental reliance claim require this Court to

interpret the CBA.  Rather, Plaintiff's detrimental reliance claim presents questions of fact

regarding whether Cingular knowingly made representations to Plaintiff regarding the terms of

his individual employment, prior to the time he became subject to, and separate and apart from,

the CBA.  See Caterpillar, 482 U.S. at 396 ("individual employment contracts are not inevitably

superseded by any subsequent collective agreement covering an individual employee, and claims

based upon them may arise under state law . . . a plaintiff covered by a collective-bargaining

agreement is permitted to assert legal rights independent of that agreement, including state-law

contract rights, so long as the contract relied upon is not a collective-bargaining agreement").

        Plaintiff's detrimental reliance claim is independent of the CBA, as a result, and is not

preempted by § 301 of the LMRA.  Cf.  Lingle, 486 U.S. at 407 ("Each of these purely factual

questions pertains to the conduct of the employee and the conduct and motivation of the

employer.  Neither of the elements requires a court to interpret any term of a

collective-bargaining agreement.  Thus, the state-law remedy [for retaliatory discharge] in this

case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that

matters for § 301 pre-emption [sic] purposes: resolution of the state-law claim does not require

construing the collective-bargaining agreement'").

      **b.**      **Whether Plaintiff's Breach of Contract Claim Is Preempted**

To establish his breach of contract claim, Plaintiff must prove by a preponderance of the

evidence: (1) the existence of a valid contract; (2) breach of that contract; and (3) damages.  See

Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985).

Plaintiff's breach of contract claim alleges that Cingular offered Plaintiff employment "on

the condition that he would not be terminated if he passed its drug screening and background

check, but could as an employee at will be terminated for other reasons."  (Compl., ¶ 17.)  In

other words, Plaintiff alleges that he entered into an individual employment contract with

Cingular, under which Cingular agreed not to terminate him for information concerning his

background that he had disclosed prior to, and as part of, the company's background check. (See

Compl., ¶¶ 16-20.)

As is the case with Plaintiff's detrimental reliance claim, none of the elements of

Plaintiff's breach of contract claim require any interpretation or reference to the CBA.  Plaintiff's

breach of contract claim presents questions of fact pertaining to an alleged individual

employment contract between Plaintiff and Cingular, which is separate and apart from the CBA.

Thus, Plaintiff's breach of contract claim is not preempted by § 301 of the LMRA.  See

Caterpillar, 482 U.S. at 396 ("individual employment contracts are not inevitably superseded by

11

any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law . . . a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement").

### 3.      *Conclusion*

Because Plaintiff's state law claims for detrimental reliance and breach of contract are not preempted by § 301 of the LMRA, this Court does not have jurisdiction over this action, pursuant to 28 U.S.C. § 1331.  Plaintiff's claims do not arise under federal law, and, as a result, federal question jurisdiction does not exist in this case.  See Franchise Tax Bd., 463 U.S. at 27-28.  To the extent this action was removed under 28 U.S.C. § 1331, removal was improper.

### C.      <u>Whether This Court Has Diversity Jurisdiction Over This Matter</u>

Because federal question jurisdiction does not exist in this case, this Court may only entertain Cingular's motion if the other ground asserted in its notice of removal - diversity jurisdiction - exists.  Plaintiff argues that diversity jurisdiction is lacking in this action because his Complaint does not allege an amount in controversy in excess of $75,000.

Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over civil actions between "citizens of different states" in which the matter in controversy exceeds $75,000.  28 U.S.C. §1332(a)(1).  Where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e, all plaintiffs must have citizenship different than all defendants.  See Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267 (1806); see also Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 & n.3 (1996).

The parties do not dispute that complete diversity exists in this case.  Plaintiff is a citizen

of New Jersey (Compl., ¶ 1), and Cingular is a Limited Liability Corporation whose members are citizens of Delaware, Texas, and Georgia (Notice of Removal, ¶¶ 14-15.)  See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 586 (2004) (recognizing various Circuit Court holdings that "each member of an LLC counts for diversity purposes").  Plaintiff has a citizenship different from all members of the defendant corporation; thus, the parties are completely diverse for purposes of establishing diversity jurisdiction under § 1332(a).

The parties, however, dispute whether the amount in controversy requirement of § 1332(a) has been satisfied in this case.  Plaintiff argues that because his Complaint does not allege an amount in excess of $75,000, and because no amount reaching $75,000 can be ascertained merely from reading the Complaint, there is no basis for this Court to exercise diversity jurisdiction at this juncture.  Cingular counters that Plaintiff's failure to include language clearly articulating the amount of monetary relief he seeks should not defeat diversity jurisdiction.  Rather, according to Cingular, "the nature of the allegations" in the Complaint make it readily apparent that Plaintiff is seeking damages in excess of $75,000.

Where a case has been removed to federal court on diversity grounds, the Third Circuit has held that the defendant must "show to a *legal certainty* that the amount in controversy exceeds the statutory minimum."  Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004) (emphasis added).

Here, Cingular nebulously argues that this Court should infer from Plaintiff's prayer for damages that Plaintiff is seeking damages in excess of $75,000.  Plaintiff's Complaint alleges that because of its conduct, "Cingular is liable for Plaintiff's loss of income, employment benefits, and emotional distress damage," as well as his "unused vacation days and excused with

pay days."  (Compl., ¶¶ 14-15.)

While it is possible that the damages Plaintiff seeks are in excess of the requisite amount in controversy, Cingular has failed to show to a *legal certainty* that the amount in controversy exceeds the statutory minimum.  Cingular has proffered no evidence from which this Court can infer the probable amount of Plaintiff's alleged lost income and benefits.  Cingular also has failed to produce any evidence or argument demonstrating that the damages for Plaintiff's alleged emotional distress likely will bring the amount in controversy beyond $75,000.

Because Cingular has not met its burden on the amount in controversy element of § 1332(a), this Court cannot find that diversity jurisdiction exists in this case.  See, e.g., Faracchao v. Harrah's Entertainment, Inc., Civil Action No. 06-1364 (RBK), 2006 WL 2096076, at *3 (D.N.J. July 27, 2006) ("In this instance, Defendants have failed to demonstrate that Plaintiff's recovery, should she prevail, would be legally certain to exceed $75,000.  Defendants' sole support for their argument to the contrary is the language of the Complaint, alleging 'severe injuries' and other ambiguous, rote phrasing common to Complaints.  Defendants have offered nothing else to indicate Plaintiff's possible, likely, or legally certain entitlement to a judgment exceeding the amount Plaintiff alleged.  There is no basis, aside from abstract speculation, to conclude that Plaintiff could recover a sum in excess of $75,000, and this Court certainly cannot so find within a legal certainty.  Accordingly, this Court may not exercise subject matter jurisdiction over the above-captioned case").

14

## IV.  **CONCLUSION**

For the reasons stated above, Cingular's motion to dismiss is denied.  Because this Court lacks subject matter jurisdiction over this matter, this Court cannot decide Cingular's motion on its merits, and must remand Plaintiff's case to New Jersey Superior Court in Bergen County for further adjudication.


Dated: June 20, 2007                                  s/ Joseph A. Greenaway, Jr.
                                                      JOSEPH A. GREENAWAY, JR., U.S.D.J.

15